CHARLEY DAVIS v. THE STATE.

No. 1352.   Decided February 7, 1912.

**1.—Murder—Evidence—Motive—Remoteness of Circumstance.**

Upon trial of murder, it was reversible error to permit the State to introduce testimony that a little over two years prior to the homicide, defendant was seen to fight and slap the deceased, no further trouble being shown between them up to the date of the homicide; this testimony was too remote to show motive or malice.

**2.—Same—Charge of Court—Res Gestae—Intent.**

Where, upon trial of murder, there was evidence that defendant kicked deceased while she was on the ground immediately after she had fallen, the same was res gestae, and there was no error in the court's failure to limit said testimony as extraneous matter to show intent.

**3.—Same—Circumstantial Evidence—Charge of Court—Remarks by Court.**

Where, upon trial of murder, the evidence was circumstantial, it was error for the court to remark, in the presence of the jury, that he had not made up his mind whether he would charge on circumstantial evidence.

**4.—Same—Charge of Court—Accidental Killing—Negligent Homicide.**

Where, upon trial of murder, the evidence raised the issue of an accidental killing, but not of negligent homicide, and the court charged on accidental killing, there was no error in the court's failure to charge on negligent homicide.

**5.—Same—Corpus Delicti—Sufficiency of the Evidence.**

Where, upon trial of murder, the evidence showed that deceased came to her death by the infliction of a wound with a knife, and the sole question was whether defendant was criminally responsible, the proposition that the corpus delicti was not proved is untenable.

**6.—Same—Charge of Court—Defensive Theories.**

Where, upon trial of murder, the evidence raised the issue as to whether the killing was intentional or accidental, the court should have fully and clearly submitted the defensive theories and not have submitted them in an abstract way.

Appeal from the District Court of Ellis.   Tried below before the Hon. F. L. Hawkins.

Appeal from a conviction of murder in the second degree; penalty, eighteen years imprisonment in the penitentiary.

The opinion states the case.

*Clyde F. Winn,* for appellant.—On 'the question of remoteness of former difficulty: McAnear v. State, 43 Texas Crim. Rep., 518; Wilburn v. State, 77 S. W. Rep., 3; Wakefield v. State, 50 Texas Crim. Rep., 124; Billings v. State, 12 S. W. Rep., 574; Ross v. Com., 55 id., 4; Herman v. State, 75 Miss., 340; Pound v. State, 43 Ga., 89; 6 Ency. on Ev., 592.

On question of corpus delicti: Lovelady v. State, 14 Texas Crim. App., 545, 17 id., 286; Robinson v. State, 16 id., 347; Blalock v. State, 49 S. W. Rep., 100.

On court's failure to limit evidence on extraneous crime: Richards v. State, 3 Texas Crim. App., 424; Francis v. State, 7 id., 501; Hall v. State, 21 S. W. Rep., 368; Weaver v. State, 81 id., 39; Wilkerson v. State, 19 id., 903; Morris v. State, 16 id., 757; Kelley v. State, 18 Texas Crim. App., 262.

On question of court's remark: Beeson v. State, 67 S. W. Rep., 96.

On court's failure to charge on negligent homicide: Howard v. State, 8 S. W. Rep., 929; Curtis v. State, 3 id., 86; Morris v. State, 33 id., 539.

On the court's failure to limit testimony of extraneous matter: People v. Lane, 100 Cal., 379; State v. Lapage, 57 N. H., 245; Com. v. Jackson, 132 Mass., 16; Shnaffner v. Com., 13 A. Rep., 649; State v. Jeffries, 117 N. C., 727; Burtes v. State, 6 S. W. Rep., 303; 3 Ency. Ev., 189; 7 id., 642.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted for the murder of his wife, his punishment being assessed at eighteen years confinement in the penitentiary.

The theory of the State was that appellant, under implied malice, killed his wife. Appellant's theory was that the wife killed herself and there was evidence showing it accidentally occurred in a tussle between the husband and wife. On the day of the homicide a lot of negroes, including appellant and deceased, were on a serenading expedition. Upon reaching a certain residence, the State's evidence is to the effect that appellant became boisterous and his wife was requested to carry him away, which she did. That after leaving the crowd a short distance the homicide occurred. None of the witnesses testify about the matter with any degree of definiteness. In fact, they did not so see it as to be able to testify with any degree of accuracy as to how the homicide occurred.

1. The State introduced the witness Livingston who testified that little over two years prior to this difficulty and the death of his wife

he saw defendant "fight her" on two or three occasions by slapping her. The evidence shows that between the date of those troubles and the date of the death of his wife there was no trouble between them. The contention is that this evidence was too remote and should have been excluded. Appellant did not object to it at the time of its introduction, understanding and believing the State would follow this up with other matters showing other difficulties between them, but this was not done, and he then requested that the testimony be withdrawn from the jury. This was not done. We are of opinion that this motion of appellant should have been sustained. As presented in the record, it was too remote. McAnear v. State, 43 Texas Crim. Rep., 518; Medina v. State, 43 Texas Crim. Rep., 52; Wakefield v. State, 50 Texas Crim. Rep., 124; Wilburn v. State, 77 S. W. Rep., 3; 4 Ency. of Evidence, p. 1002; 6 Ency. of Evidence, 592; Billings v. State, 12 S. W. Rep., 574; Herman v. State, 75 Miss., 340; Pound v. State, 43 Ga., 89; Ross v. Com., 55 S. W. Rep., 4. These occurrences were two years, or such a matter, before the homicide, and were too remote in the absence of showing intermediate trouble between them so as to bring it closer to the homicide. The trouble between an accused and the deceased must be of such a continuous nature as to show that the act proved may have evidenced motive or malice, or furnished reason for the killing, otherwise it would not be admissible. Hall v. State, 31 Texas Crim. Rep., 565. But where the act is remote and not followed by other acts of the same character or general nature, it will not be admissible. The authorities above support this proposition. We think this was error.

2. The court failed to limit the evidence adduced to the effect that appellant kicked his wife when she was on the ground at the point where she died. This kick occurred immediately after the wife was seen to fall or was seen on the ground by the witnesses a short distance away. We are of opinion the court did not err in failing to limit this testimony. It was part of the transaction itself, was not an independent crime, and, therefore, not necessary to be limited as extraneous matter or to show malice, motive or intent or to develop the res gestae. It was an immediate part of the difficulty itself and not extraneous.

3. During the trial and while the issues were being discussed, the question as to whether the law of circumstantial evidence should be given in instruction to the jury came up for discussion. The court remarked that he did not know whether he would so charge or not, that he had not made up his mind on that question. Exception was reserved to this remark on the ground, among other things, because it conveyed to the jury the court's opinion that the case was not one of circumstantial evidence, at least that it was, in the mind of the court, fully a debatable question, so much so that he had not determined whether he would charge that phase of the law. This may and doubtless did influence the jury to believe that the court thought the facts

were sufficiently cogent to preclude the idea of charging on the law of circumstantial evidence. The testimony shows beyond any cavil that it was a case of circumstantial evidence. This remark should not have been indulged by the court. Beason v. State, 43 Texas Crim. Rep., 442. The Beason case is analogous to this and very much like it in this respect.

4. It is contended the court should have charged the law of negligent homicide. We are of opinion appellant's contention is not sound. The court gave a charge with reference to accidental homicide, which was one of the theories raised by the evidence, and which was for the benefit of the defendant. The evidence upon this phase of the case was to the effect that the deceased had a knife in her hand, and that she and her husband, appellant, were scuffling over a purse which she had taken from him, and that in the scuffle this knife accidentally cut the deceased so that she died. This does not raise the issue of negligent homicide. It would, however, suggest, as the court charged, the theory of accidental killing.

5. Another proposition is urged for reversal, to wit: that the corpus delicti was not proved. Appellant cites us to the case of Lovelady v. State, 14 Texas Crim. App., 545, and the same case reported in 17 Texas Crim. App., 286, and other cases. These cases are not applicable to this case. In the Lovelady case the evidence failed to show that the deceased was killed, that is, the testimony failed to show how she came to her death, and the State was unable to prove the fact as to whether it was by violence or not. Here there is no question of the fact that deceased came to her death by the infliction of a wound and with accuracy that that wound was caused by a knife. The question at issue here is whether the defendant did it, or that it was accidentally done in the scuffle between deceased and defendant, or that it was self-inflicted by deceased. Therefore, the question as to corpus delicti was not in the case. The serious question in the case was to connect defendant criminally with the death of deceased.

6. Another question suggested is, that the court erred in not giving the following instruction asked by appellant: "You are further instructed that you can not convict the defendant in this case unless you believe from the evidence (1) That the defendant inflicted the mortal wound upon Lula Davis. (2) That he did it intentionally—that is, with malice aforethought either express or implied. If you have a reasonable doubt as to whether defendant inflicted the mortal wound upon Lula Davis you will acquit the defendant and say by your verdict not guilty. If you believe from the evidence that defendant did inflict the mortal wound upon Lula Davis, but you should have a reasonable doubt as to whether he did it intentionally, you will acquit him and say by your verdict not guilty."

This charge is a very clear and succinct statement of the issues of the case as shown by the testimony; in fact, we are of opinion that it covers in a rather laconic manner the issues that should have been sub-

mitted to the jury.  Upon another trial we would suggest to the trial court that he give the charge asked by appellant, omitting, of course, that phase of it with reference to express malice inasmuch as appellant has been acquitted of murder in the first degree.  We would not feel, however, justified in reversing for the court's failure to give the above charges in view of the following charge given by the court.

7.  The court submitted murder in the second degree, and with reference to the other issues in the case embodied them in the following language:  "If you believe that Lula Davis cut or stabbed herself, either purposely or accidentally, or if you have a reasonable doubt thereof, you must acquit the defendant; or, if you believe the defendant and his wife was engaged in a tussle over some money, and that in the tussle the wound which caused deceased's death was accidentally inflicted, or if you have a reasonable doubt thereof, you must acquit the defendant."

While this charge, in a general way, submits the defensive theories in an abstract way, yet it did not as clearly and forcibly put the questions before the jury for their decision directly pertinent to the case as did the special charge requested by appellant.  If the defendant inflicted the mortal wound upon Lula Davis and did it intentionally, he would be guilty at least of murder in the second degree, unless the other circumstances showed mitigation or extenuation.  If he did not do this intentionally or did not in fact inflict the wound, then he would be entitled to an acquittal.  If there was a reasonable doubt as to whether he inflicted the wound upon deceased, he should have been acquitted, or if the woman inflicted it upon herself he should be acquitted.  We deem it unnecessary to go into a statement of the facts further than as has been stated.  The general statement set out, we think, sufficiently conveys the idea as to the issues of the case and a lengthy statement in detail of the evidence would serve no useful purpose.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*