Charles R. AYCOCK, Appellant,

v.

The STATE of Texas, Appellee.

No. B14–90–00638–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Sept. 9, 1993.

Peter Adams, Houston, for appellant.

Carol Cameron, Jack Thompson, Houston, for appellee.

Before MURPHY, SEARS and DRAUGHN, JJ.

## OPINION ON REMAND

SEARS, Justice.

Appellant was charged with possession of a controlled substance, namely cocaine, weighing less than 28 grams. He presented the trial court with a motion to suppress all evidence seized as a result of two warrantless searches. The trial court denied the motion, and Appellant pled guilty. The Court deferred adjudication of guilt, placed the Appellant on seven years probation and assessed an eight hundred dollar fine.

Appellant appealed, claiming that the trial court erred in overruling his motion to suppress because both searches violated his rights under the United States and Texas Constitutions. On original submission, this Court upheld the warrantless searches of Appellant's person and luggage *under the United States Constitution. Aycock v. State,* 828 S.W.2d 516 (Tex.App.—Houston [14th Dist.] 1992). Appellant filed a petition for discretionary review, and the Court of Criminal Appeals vacated the judgment and remanded the cause to our Court for consideration of Appellant's point of error under Texas law. *Aycock v. State,* 842 S.W.2d 292 (Tex.Crim.App.1992). Upon examination of the transcript and the applicable law, we affirm the judgment.

## FACTS

The State and Appellant stipulated to the facts. On November 21, 1989, during a customs check of passengers and luggage bound from Houston Intercontinental Airport to Belize, "Ace," an inspection dog, alerted on one piece of luggage. This bag had three tags on it: one airline tag, indicating that it was being exported to Belize on TACA flight # 411; one name tag, indicating that the bag had been checked by a "Charles Aycock;"

and one destination tag, marked with the serial number 25–91–02. U.S. Customs officers had "Mr. Aycock" paged in the departure area of TACA. Appellant approached the counter agent of TACA Airlines and identified himself as Charles Aycock. The Appellant was escorted to a U.S. Customs office.

A U.S. Customs officer then searched the Appellant. The officer found baggage claim tag # 25–91–02 in Appellant's possession. An inspector then searched the bag. Inside, he found a pill bottle with Charles Aycock's name on the prescription label. Inside the bottle he found fourteen penicillin tablets, some unidentified orange pills and a small plastic bag containing a white-colored rocky substance. This substance field-tested positive for cocaine. The Appellant was arrested, and the bag and its contents were seized as evidence. Both searches were made without warrants and without Appellant's consent.

## REVIEW UNDER TEXAS LAW

In *Heitman v. State*, 815 S.W.2d 681 (Tex. Crim.App.1991), the Court of Criminal Appeals reserved the power to interpret the Texas Constitution differently than the United States Constitution. The Court noted that the Texas Constitution "was not intended by our founding fathers to mirror that of the federal government." *Heitman* at 690. Therefore, the Court instructed appellate courts to conduct an independent analysis of an appellant's state constitutional claims when those claims are properly raised. *Heitman* at 682. However, since *Heitman*, the Court of Criminal Appeals has not interpreted Article I § 9 of our State constitution any differently than the Fourth Amendment of the United States Constitution.

Generally, Texas law requires probable cause and the issuance of a warrant to establish the validity of a search. *Joseph v. State*, 807 S.W.2d 303 (Tex.Crim.App.1991); *Kelly v. State*, 669 S.W.2d 720, *cert. denied*, 469 U.S. 963, 105 S.Ct. 362, 83 L.Ed.2d 298 (1984). Of course, there are exceptions to this general rule.[1] One exception which is regularly applied by federal courts is the border search doctrine. The border search doctrine is an exception to the Fourth Amendment requirement of probable cause. *United States v. Ezeiruaku*, 936 F.2d 136, 140 (3rd Cir.1991). Routine border searches are authorized on no suspicion, and non-routine searches are authorized on suspicion alone. *Id.* Further, border searches require no warrant to ensure their validity. *Id.*

Border searches have been considered reasonable since before the adoption of the Fourth Amendment, based upon the single factor that the person or item in question has entered the country. *United States v. Ajlouny*, 629 F.2d 830, 833 (2nd Cir.1980), *cert. denied*, 449 U.S. 1111, 101 S.Ct. 920, 66 L.Ed.2d 840 (1981), *citing, United States v. Ramsey*, 431 U.S. 606, 97 S.Ct. 1972, 52 L.Ed.2d 617 (1977). After the adoption of the Fourth Amendment and throughout the jurisprudential history of this country, the border search doctrine has continued to be an exception to the Fourth Amendment requirement of probable cause due to "the Government's sovereign authority to protect itself." *United States v. Udofot*, 711 F.2d 831, 839 (8th Cir.), *cert. denied*, 464 U.S. 896, 104 S.Ct. 245, 78 L.Ed.2d 234 (1983). Unlike federal courts, Texas courts have rarely been asked to analyze border searches, and have even more rarely been asked to review such a search under state law.

We have found only eight Texas cases which have even mentioned the performance of a border search, either in their rendition of the facts, analysis of their case, or analysis of other authority.[2] Three of those cases did

---

**1.** See, *McNairy v. State*, 835 S.W.2d 101, 106 (Tex.Crim.App.1991), *Crane v. State*, 786 S.W.2d 338 (Tex.Crim.App.1990), and *Stewart v. State*, 681 S.W.2d 774, 777 (Tex.App.–Houston [14th Dist.] 1984, pet. ref'd).

**2.** (1) *Pearson v. State*, 587 S.W.2d 393 (Tex.Crim. App.1979), *cert. denied*, 446 U.S. 912, 100 S.Ct. 1844, 64 L.Ed.2d 266 (1980); (2) *Duff v. State*,

546 S.W.2d 283 (Tex.Crim.App.1977); (3) *Tamez v. State*, 534 S.W.2d 686 (Tex.Crim.App.1976); (4) *Sanders v. State*, 482 S.W.2d 648 (Tex.Crim. App.1972); (5) *Guadian v. State*, 420 S.W.2d 949 (Tex.Crim.App.1967); (6) *Aycock v. State*, 828 S.W.2d 516 (Tex.App.–Houston [14th Dist.] ), *vacated*, 842 S.W.2d 292 (Tex.Crim.App.1992); (7) *Fuentes v. State*, No. 14–83–00252–CR (Tex.App.– Houston [14th Dist.] September 18, 1986) (not

not directly deal with the issue of border searches.[3] Three of the cases which did address the issue of border searches were restricted to an analysis under the Fourth Amendment.[4] The two cases which mentioned border searches in relation to state law did not make a determination of whether or not such a search is an exception to the probable cause requirements of the Texas Constitution.[5]

In 1967, the Court of Criminal Appeals held that a search "occurring at some distance inland" from the border by U.S. Customs officers was justified where the "agents had reason to believe that the vehicle or person was carrying contraband." *Guadian v. State*, 420 S.W.2d 949, 952 (Tex.Crim.App. 1967). The Court noted that "the right of a border search does not depend on probable cause and is in a separate category from searches generally." *Id.* The Court concluded that the evidence was sufficient "*to show probable cause* and authorize the search and seizure *under the state law.*" *Id.* (emphasis added). It is unclear from *Guadian* whether the Court was attempting to establish a "probable cause standard" under state law for Customs searches, or whether the Court was merely indicating that the evidence was even sufficient to show probable cause.

Nine years later, in *Tamez v. State*, 534 S.W.2d 686 (Tex.Crim.App.1976), the Court examined the legality of a *possible* border search under the United States and Texas constitutions. The Court noted that it had to decide "whether the fruits of the search were admissible as a border search." In the end, the Court did not address the applicability of the border search exception to state law,

because the Court determined that the search occurred too far inland to constitute a border search. *Tamez* at 690. However, the tone and wording of *Tamez* indicate that the Court believed that the border search doctrine was a valid exception to the probable cause and warrant requirements of both the United States and Texas constitutions.

■ We can find no Texas case which has directly resolved the issue of the applicability of the border search doctrine to state law. Further, we can find no state precedent which has interpreted Article I § 9 differently than the Fourth Amendment when the complained-of search occurred at an international border or its functional equivalent. Finally, we can find no state law which has restricted the search authority of a law enforcement agency at the border beyond established federal constraints. In light of the unique judicial history of the border search doctrine and the necessity of the United States to protect itself, we hold that the Texas Constitution does not guarantee an individual any greater rights **at the border** against unreasonable searches and seizures than does the United States Constitution.

The previous opinion of this Court expressly held that under the Fourth Amendment, the searches "did not go beyond the scope of a routine customs search and inspection." *Aycock* at 520. We upheld the denial of the Motion to Suppress on that ground. This determination was made final when the Court of Criminal Appeals refused to review Appellant's Fourth Amendment claim. This case has been remanded to our Court **solely** for a review under state law. Having now determined that in this instance the Texas Constitution should be interpreted the same

designated for publication); and (8) *Uribe v. State*, No. 14–83–100–CR and 14–83–101–CR, (Tex.App.–Houston [14th Dist.] December 22, 1983), *reversed on other grounds*, 688 S.W.2d 534 (Tex.Crim.App.1985), *overruled*, 833 S.W.2d 134 (Tex.Crim.App.1992).

**3.** (1) *Pearson v. State*, 587 S.W.2d 393 (Tex.Crim. App.1979), *cert. denied*, 446 U.S. 912, 100 S.Ct. 1844, 64 L.Ed.2d 266 (1980); (2) *Duff v. State*, 546 S.W.2d 283 (Tex.Crim.App.1977); and (3) *Sanders v. State*, 482 S.W.2d 648 (Tex.Crim.App. 1972).

**4.** (1) *Aycock v. State*, 828 S.W.2d 516 (Tex.App.– Houston [14th Dist.] ), *vacated*, 842 S.W.2d 292 (Tex.Crim.App.1992); (2) *Fuentes v. State*, No. 14–83–00252–CR (Tex.App.–Houston [14th Dist.] September 18, 1986) (not designated for publication); and (3) *Uribe v. State*, No. 14–83–100–CR and 14–83–101–CR (Tex.App.–Houston [14th Dist.] December 22, 1983), *reversed on other grounds*, 688 S.W.2d 534 (Tex.Crim.App.1985), *overruled*, 833 S.W.2d 134 (Tex.Crim.App.1992).

**5.** *Tamez v. State*, 534 S.W.2d 686 (Tex.Crim.App. 1976), and *Guadian v. State*, 420 S.W.2d 949 (Tex.Crim.App.1967).

as the United States Constitution, we are bound by the law of the case.

■ "The law of the case" is a doctrine which mandates that the ruling of an appellate court on a question of law raised on appeal will be regarded as the law of the case in all subsequent proceedings of the same case. *Brown v. Owens*, 663 S.W.2d 30, 33 (Tex.App.–Houston [14th Dist.] 1983), *affirmed in part reversed in part*, 674 S.W.2d 748 (Tex.1984). Matters of law which were disposed of on a former appeal will not again be decided by the court. *Id.* Therefore, because this Court has now determined that the Texas Constitution does not guarantee an individual any greater rights **at the border** against unreasonable searches and seizures than does the United States Constitution, and because this Court previously determined that the searches were valid under the United States Constitution, we are now bound by the law of the case to hold that the searches did not violate the Texas Constitution.

This search was not made "at the border," but was made by a U.S. Customs agent, at an international airport, and of passengers and luggage that were *departing* this country. A customs search at an international airport of both persons and luggage has been held to be the equivalent of a border search, conducted at the functional equivalence of the border. *See, United States v. Berisha*, 925 F.2d 791 (5th Cir.1991), *United States v. Amuny*, 767 F.2d 1113, 1123 (5th Cir.1985), *United States v. Niver*, 689 F.2d 520, 526 (5th Cir.1982), and *Uribe v. State*, Nos. 14-83-100-CR & 14-83-101-CR (Tex.App.–Houston [14th Dist.] December 22, 1983), *reversed on other grounds*, 688 S.W.2d 534 (Tex.Crim.App.1985), *overruled*, 833 S.W.2d 134 (Tex.Crim.App.1992).

■ Ever since the Supreme Court's opinion of *California Bankers Assoc. v. Shultz*, 416 U.S. 21, 63-64, 94 S.Ct. 1494, 1518, 39 L.Ed.2d 812 (1974), which indicated that "those entering and leaving the country may be examined as to their belongings and effects all without violating the Fourth Amendment," the Second, Third, Fifth, Eighth and Ninth circuits have all held that the border search exception applies with equal force to persons or objects leaving this country as it does to those entering this country.[6] From our research, there is no Federal or Texas statute which restricts a custom agent's authority to conduct a routine border search on departing travelers. The recent developments in both statutory and case law indicate instead that border searches may constitutionally be extended to *all* departing travelers. We are not free to make laws which would infringe on the federal government's right to control persons and things entering and leaving this country. Therefore, we hold that under Texas law, border searches apply with equal force to both entering and exiting travelers.

Appellant's point of error under Texas law is overruled, and the judgment of the trial court is affirmed.

---

6. *United States v. Ajlouny*, 629 F.2d 830, 833 (2nd Cir.1980), *cert. denied*, 449 U.S. 1111, 101 S.Ct. 920, 66 L.Ed.2d 840 (1981); *United States v. Ezeiruaku*, 936 F.2d 136 (3rd Cir.1991); *United States v. Berisha*, 925 F.2d 791 (5th Cir.1991); *United States v. Udofot*, 711 F.2d 831 (8th Cir.), *cert. denied*, 464 U.S. 896, 104 S.Ct. 245, 78 L.Ed.2d 234 (1983); and *United States v. Duncan*, 693 F.2d 971, 976 (9th Cir.1982), *cert. denied*, 461 U.S. 961, 103 S.Ct. 2436, 77 L.Ed.2d 1321 (1983).